**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────────────────

**SUR G. NOVEL,**

                              **Plaintiff,**

        **vs.**                                                    **1:12-CV-01447**
                                                                   **(MAD/RFT)**

**WILLIAM DOUGLAS LOWE; REESE, PYLE,**
**DRAKE, & MEYER, PLL; PATRICK M.**
**MCGRATH; THE GLEN GALLWITZ LIVING**
**TRUST; THE ESTATE OF GLEN GALLWITZ;**
**WAYNE GALLWITZ; PAUL A. GALLWITZ;**
**DAVID R. GALLWITZ; MARY ANN TEET, RAY**
**S. GALLWITZ; EARL R. GALLWITZ; BETTY**
**SUE STREET; BRITTNEY BALLINGER; KEVIN**
**GALLWITZ; CRYSTAL GALLWITZ; JEFFERY**
**A. ZAPOR; DAVID C. MORRISON; AND FRED**
**W. MANKINS,**

                              **Defendants.**

─────────────────────────────────────────────

**APPEARANCES:**                                  **OF COUNSEL:**

**SUR G. NOVEL**
Empire Tower 47th Floor RWE
195 S. Sathorn Road
Yannawa, Bangkok, Thailand 10120
Plaintiff *pro se*

**O'CONNOR, O'CONNOR,**                            **MARGARET E. DUNHAM, ESQ.**
**BRESEE, & FIRST, P.C.**
20 Corporate Woods Boulevard
Albany, New York 12211
Attorneys for Defendants William Douglas Lowe
and Reese, Pyle, Drake, & Meyer, PLL

**DEVINE, MARKOVITS,**                             **THOMAS A. SNYDER, ESQ.**
**& SNYDER, L.L.P.**
52 Corporate Circle, Suite 207
Albany, New York 12203
Attorneys for Defendant Patrick M. McGrath

**JAMES E. ARNOLD & ASSOCIATES, LPA**
115 West Main Street
4th Floor
Columbus, Ohio 43215
*Pro Hac Vice* Attorneys for Defendant
Patrick M. McGrath

**ALVIN E. MATTHEWS, ESQ.**
**CRYSTAL R. RITCHIE, ESQ.**

**HACKER & MURPHY, LLP**
7 Airport Park Boulevard
Latham, New York 12110
Attorneys for Defendants The Glen Gallwitz Living
Trust, Estate of Glen Gallwitz, Wayne E. Gallwitz,
Paul A. Gallwitz, David R. Gallwitz, Mary Ann
Teet, Earl R. Gallwitz, and Brittney Ballinger

**JOHN F. HARWICK, ESQ.**
**THOMAS J. HIGGS, ESQ.**

**LEWIS, BRISBOIS, BISGAARD &
SMITH, LLP**
77 Water Street, 21st Floor
New York, New York 10005
Attorneys for Defendants Ray Gallwitz, Betty Sue
Street, Kevin Gallwitz, and Crystal Gallwitz

**PETER T. SHAPIRO, ESQ.**

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Sur G. Novel ("Plaintiff") initiated the present action *pro se* on September 19,

2012; he submitted an amended complaint on November 7, 2012 to include additional

Defendants. *See* Dkt. No. 5 at 1-3.[1]  Plaintiff alleges eleven counts against eighteen different

Defendants: malicious prosecution, breach of contract, violation of federal and antitrust laws,

negligence, fraud, interference with the right of sepulcher, and unauthorized practice of law and

professional misconduct. *See id*. at 7, 16, 22, 26, 29, 34, 45, 50, 55-56, 59.

Presently before the Court are motions by fifteen of the eighteen Defendants.

---

[1] To avoid confusion, anytime the Court references a specific page number for an entry on
the docket, it will cite to the page number assigned by the Court's electronic filing system.

Defendants Ray S. Gallwitz, Betty Sue Street, Crystal Gallwitz, and Kevin Gallwitz move for an order seeking the following relief: (1) dismissing Plaintiff's amended complaint for the Court's lack of in personam jurisdiction over Defendants pursuant to Fed. R. Civ. P. 12(b)(2); (2) dismissing Plaintiff's amended complaint for improper venue, pursuant to Fed. R. Civ. P. 12(b)(3); or, in the alternative, (3) transferring venue pursuant to 28 U.S.C. § 1404(a). These Defendants also seek a stay on discovery pursuant to Fed. R. Civ. P. 26(c). *See* Dkt. No. 21 at 2.

Defendant Patrick McGrath moves for an order: (1) dismissing Plaintiff's amended complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); (2) dismissing Plaintiff's amended complaint because Defendant McGrath enjoys judicial immunity; (3) dismissing Plaintiff's amended complaint for the Court's lack of in personam jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); and (4) dismissing Plaintiff's amended complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).[2] *See* Dkt. No. 27 at 3.

Defendants William M. Douglas and Reese, Pyle, Drake, & Meyer, PLL move for an order: (1) dismissing Plaintiff's amended complaint for the Court's lack of in personam jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); (2) dismissing Plaintiff's complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3); (3) dismissing Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); or, in the alternative, (4) transferring venue to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). *See* Dkt. No. 28-8 at 3.

Defendants The Glen Gallwitz Living Trust, Estate of Glen Gallwitz, Wayne E. Gallwitz, Paul A. Gallwitz, David R. Gallwitz, David R. Gallwitz, Mary Anne Teet, Earl R. Gallwitz, and

---

[2] Defendant McGrath also asserts that while he believes it is in the interest of justice to dismiss for improper venue, if the Court does not dismiss, the action should be transferred to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). *See* Dkt. No. 44 at 6, n.2.

3

Brittney Ballinger move for an order: (1) dismissing Plaintiff's amended complaint for the Court's lack of in personam jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); (2) dismissing Plaintiff's amended complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3); (3) dismissing for improper service pursuant to Fed. R. Civ. P. 12(b)(5); or, in the alternative, (4) transferring venue to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a).  *See* Dkt. No. 35-11 at 5, 15.

Plaintiff has opposed Defendants' motions.  *See generally*, Dkt. Nos. 39; 41.

## II. BACKGROUND

The facts of this case are taken from Plaintiff's amended complaint and are, for the purposes of Defendants' motions, presumed to be true.  Plaintiff is a United States citizen permanently residing in Bangkok, Thailand.  *See* Dkt. No. 5 at 7, 39.  Plaintiff attended high school, college, and law school in Ohio.  *See id*. at 39.  He then moved to New York State to take the New York State Bar exam, which he passed in 2002.  *See id*. at 7, 9.  Plaintiff retains residences in both Brooklyn, New York, and Hoboken, New Jersey, but has lived and worked in Thailand since either 2001 or 2002.[3]  *See id.* at 5, 9, 39; Dkt. No. 5-2 at 1.

William Douglas Lowe ("Lowe") is a lawyer working and residing in Ohio.  *See id.* at 7. Lowe represented some of the other defendants in Ohio claims.  *See id.* at 11.  Reese, Pyle, Drake, & Meyer, PLL ("Reese Pyle") is a law firm with its head office in Newark, Ohio.  *See id.*  Lowe is a lawyer at Reese Pyle.  *See id.*  Judge Patrick M. McGrath ("McGrath") is a retired Ohio judge residing in Ohio.  *See id.*  The Glen Gallwitz Living Trust ("The Trust") is an Ohio trust; its trustee is Wayne Gallwitz ("W. Gallwitz"), an Ohio resident.  *See id*.  The Estate of Glen Gallwitz

---

[3] Plaintiff asserts he was permanently in New York State until 2002, but later states he has lived in Thailand since 2001.  *See* Dkt. No. 5 at 5, 39.

("The Estate") is an Ohio estate; its executor is W. Gallwitz. *See id.* at 8.  W. Gallwitz, Paul A.

Gallwitz ("P. Gallwitz"), David R. Gallwitz ("D. Gallwitz"), Mary Ann Teet ("Teet"), Ray S.

Gallwitz ("R. Gallwitz"), Earl R. Gallwitz ("E. Gallwitz"), Betty Sue Street ("Street"), and

Brittney Ballinger ("Ballinger") are all residents of Ohio and beneficiaries of The Trust and The

Estate. *See id.* at 8-9.  Kevin Gallwitz ("K. Gallwitz") and Crystal Gallwitz ("C. Gallwitz") are

married Ohio residents. *See id.* at 9.  Jeffery A. Zapor ("Zapor") represented some of the other

defendants in Ohio claims. *See id.* at 11.  David C. Morrison ("Morrison") and Fred W. Mankins

("Mankins") are listed as Defendants in the amended complaint, but Plaintiff fails to provide any

details about these individuals or allege conduct in which they engaged.  Plaintiff also does not

include the residences of Zapor, Morrison, or Mankins.

Plaintiff's grandmother, Carrie Gallwitz, married Glen Gallwitz in 1989.  *See* Dkt. No. 5 at

29.  The couple signed a prenuptial agreement in Ohio prohibiting any legal challenges to each

others' last will and testament.[4]  *See id.* at 29, 87.  Eleven years later, Plaintiff became Trustee of

the Carrie Gallwitz Living Trust.  *See id.* at 9.  Carrie Gallwitz died on August 20, 2007, leaving

behind real property in Ohio.  *See id.* at 10.  Both Plaintiff and Glen Gallwitz claimed ownership

of the property.  *See id.*  As a result, litigation ensued between the two parties.  On October 5,

2007, Glen Gallwitz filed a quiet title action in the Knox County, Ohio Court of Common Pleas

against Plaintiff (as an individual and as Trustee of the Carrie Gallwitz Living Trust).  *See id.*

The court then, at Glen Gallwitz's request, placed a temporary injunction on the property,

enjoining Plaintiff from selling, mortgaging, or encumbering the estate and from evicting Glen

Gallwitz.  *See id.* at 10.  The injunction was made permanent in November 2007, and lasted until

---

[4] Plaintiff alleges that this agreement and Carrie Gallwitz's will were concealed initially by
Glen Gallwitz.  *See* Dkt. No. 5 at 31.

November 2009. *See id.* at 10-12. Glen Gallwitz died on July 2, 2009, and later that year, on

October 28, all parties involved in the property dispute reached a settlement agreement.[5] *See id.*

In addition to the property disputes between the parties, actions were also filed against

Plaintiff's mother. *See id.* at 27. On November 30, 2007, Glen Gallwitz filed an action to reopen

the Estate of Carrie Gallwitz to bring an action against Plaintiff's mother, Executrix of Carrie

Galliwtz's will, for misappropriation of $40,000. *See id.* at 30. In 2009, this claim was dismissed

in favor of Plaintiff and his mother. *See id.* at 32. On May 3, 2010, Lowe, Reese Pyle, and The

Estate obtained an order indebting her to The Estate, and a year later, obtained an order to

foreclose on her house in order to pay that debt. *See id.* at 27.

Throughout the litigation over the disputed property, Glen Gallwitz retained different

counsel, including Zapor and Lowe. *See id.* at 11. On March 31, 2010, Plaintiff, acting *pro se*,

initiated a suit against Zapor, alleging professional misconduct, fraud, and abuse of process. *See

id*. at 22. Plaintiff requested that Lowe and W. Gallwitz voluntarily cooperate with his action;

after they refused, Plaintiff issued them subpoenas. *See id.* at 23. In response, Lowe and Reese

Pyle moved to quash the subpoenas and accused Plaintiff of unauthorized practice of the law. *See

id.* at 24. On March 10, 2011, Judge McGrath was assigned, after numerous judges recused

themselves, to Plaintiff's case against Zapor. *See id.* at 38. On April 12, 2011, Judge McGrath

dismissed the case, concluding Plaintiff could not appear *Pro Hac Vice*, and that Plaintiff was

engaged in the unauthorized practice of law. *See id* at 39, 41-42. In 2011, disciplinary

proceedings were initiated against Plaintiff in both Ohio and New York regarding unauthorized

practice of the law in Ohio. *See id.* at 13-14. According to Plaintiff, both proceedings were

---

[5] Plaintiff asserts that he, Lowe, W. Gallwitz, The Trust, and The Estate were all parties to
the agreement, requiring all of them to agree not to bring any actions on behalf of The Estate
against any parties released by the agreement. *See* Dkt. No. 5 at 16-20.

initiated by Lowe, possibly on behalf of members of the Gallwitz family. *See id* at 13-14, 59.

Lowe traveled to New York on October 23, 2012 to testify at a disciplinary hearing against

Plaintiff.[6] *See id.* at 57. The disciplinary hearing occurred a week before Plaintiff's father's

original funeral and memorial date. *See id.* at 56.

Plaintiff asserts that eleven claims have arisen from these actions. Count 1 alleges

malicious prosecution against Lowe.[7] *See id.* at 6, 14. Counts 2 , 3, and 4 all allege breach of

contract of the October 2009 settlement agreement.[8] *See id*. at 16, 22, 26. Count 5 alleges breach

of contract of the prenuptial agreement of Carrie Gallwitz and Glen Gallwitz against The Estate

and The Trust.[9] *See id*. at 29. Count 6 alleges violation of United States Federal and Antitrust

Laws against Judge McGrath.[10] *See id.* at 34, 41-44. Count 7 alleges negligence against The

---

[6] Lowe is the only Defendant who traveled to New York for the disciplinary hearing.

[7] Plaintiff asserts that Lowe acted with malice during the dispute over Carrie Gallwitz's property and when he initiated disciplinary hearings against him in both Ohio and in New York. *See* Dkt. No. 5 at 14-15.

[8] In Count 2, Plaintiff asserts that The Estate and The Trust breached when they enticed Lowe and Reese Pyle to file disciplinary actions against Plaintiff in Ohio and New York. *See* Dkt. No. 5 at 20. In Count 3, Plaintiff asserts that Lowe, Reese Pyle, The Estate, and The Trust breached by failing to cooperate with Plaintiff in his suits subsequent to the settlement agreement, by trying to force Plaintiff to claim Glen Gallwitz owned the former disputed property in fee simple, and by causing Plaintiff to lose opportunities to sell the former disputed property. *See id*. at 24-25. In Count 4, Plaintiff asserts that Lowe, Reese Pyle, The Estate, and The Trust breached by failing to acquit Plaintiff's mother of their causes of action against her and by attempting to foreclose on Plaintiff's mother's home to pay a debt she owed to The Estate. *See id*. at 27-28.

[9] Plaintiff asserts The Trust and The Estate breached by bringing claims regarding the disputed property, by concealing the prenuptial agreement along with other documents, for filing an illegally backdated quit claim deed, and by filing a disciplinary action in Ohio and in New York against Plaintiff. *See* Dkt. No. 5 at 32-33.

[10] Plaintiff asserts McGrath violated United States antitrust laws when he dismissed Plaintiff's case against Zapor for Plaintiff's unauthorized practice of the law in Ohio because the ruling restricts competition in Ohio by an attorney licensed in a different state, drives up the legal costs for out-of-state litigants, ignored the fact that the party filing the allegations was not a consumer of Plaintiff's legal services, ignored Plaintiff's New York licence and *Pro Hac Vice*

Trust, The Estate, W. Gallwitz, P. Gallwitz, D. Gallwitz, Teet, R. Gallwitz, E. Gallwitz, Street, and Ballinger.[11] *See id.* at 49.  Counts 8 and 9 allege fraud against Defendants Lowe, Reese Pyle, W. Gallwitz, Street, R. Gallwitz, K. Gallwitz, and C. Gallwitz.[12] *See id.* at 50, 53-55.  Count 10 alleges interference with Plaintiff's right of sepulcher against "Defendants."[13] *See id.* at 56, 58.  Count 11 alleges unauthorized practice of law in New York and professional misconduct against Lowe.[14] *See id.* at 59-60.

---

motion, ignored Plaintiff's agreement with an Ohio attorney to assist and associate with Plaintiff, ignored the Ohio attorney's Notice of Appearance, applied the incorrect *Pro Hac Vice* rules, and is being used against Plaintiff in his New York disciplinary action. *See* Dkt. No. 5 at 41-43. Plaintiff asserts McGrath violated United States federal laws by failing his duty to report and not compound the unlawful acts of a convicted felon, engaging in "ex-parte" communications with another judge and opposing counsel, acting under color of law when he acted, failing to serve a judgment entry to a defendant, and by using the United States Mail Service to further his dismissal of Plaintiff's case. *See id.* at 43-44.

[11] Plaintiff asserts that The Trust, The Estate, and their beneficiaries owed Plaintiff a duty not to bring actions or entice others to bring actions against Plaintiff. *See* Dkt. No. 5 at 48. He alleges that these defendants breached this duty in numerous ways, including enticing Lowe and Reese Pyle to initiate the disciplinary proceedings in Ohio and New York. *See id.* at 48-49. He also asserts that Glen Gallwitz owed him, as Trustee of Carrie Gallwitz's estate, a duty not to bring frivolous litigation, not to conceal documents, not to forge or backdate documents, not to conceal marital assets, and not to misappropriate Carrie Gallwitz's savings after her death. *See id.* at 45. He alleges these duties were breached in numerous ways. *See generally id.* at 45-48.

[12] In Count 8, Plaintiff asserts that Lowe, Reese Pyle, W. Gallwitz, Street. K. Gallwitz, and C. Gallwitz acted to hinder the prosecution of a crime or assisted in committing a crime, enabled each other to avoid apprehension, failed to disclose facts and documents material to lawsuits, concealed and destroyed evidence and convinced others to do so, and communicated false information to the courts and Plaintiff. *See* Dkt. No. 5 at 50-51. Plaintiff specifically enumerates his allegations against each defendant thereafter. *See generally id.* at 51-54. In Count 9, Plaintiff asserts Lowe, Reese Pyle, and W. Gallwitz knowingly made false statements to a court of law. *See id.* at 55.

[13] Plaintiff asserts that unnamed Defendants' unlawful actions forced him to put his father's funeral and memorial on hold due to lack of funds. *See* Dkt. No. 5 at 58.

[14] Plaintiff asserts Lowe was representing members of the Gallwitz family illegally when he filed documents in New York regarding disciplinary actions against Plaintiff. *See* Dkt. No. 5 at 59. He also asserts Lowe made intentional misrepresentations to the Committee on Professional Standards, New York, Third Judicial Department. *See id.* at 60.

8

## III. DISCUSSION

**A.      Defendants' Motion to Transfer Venue to the United States District Court for the Southern District of Ohio**

Defendants argue that this action should be transferred to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a).  Defendants assert a venue transfer will promote the interests of justice and convenience for the parties and witnesses. Plaintiff disagrees, arguing his choice of forum should not be disturbed.

Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought, or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a) (2013).  This section, "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice . . .  To this end it empowers a district court to transfer any 'civil action' to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). "'[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis.'"  *View 360 Solutions, LLC v. Google, Inc.*, No. 1:12CV1352(GTS/TWD), 2013 U.S. Dist. LEXIS 34480, *3 (N.D.N.Y. Mar. 13, 2013) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)) (citation omitted).

In considering a transfer of venue, the Court must determine: "(1) whether the action sought to be transferred is one that 'might have been brought' in the transferee court; and (2) whether, considering the 'convenience of parties and witnesses,' and the interests of justice, a

9

transfer is appropriate."  *Litton v. Avomex, Inc.*, No. 08CV1340(NAM/DRH), 2010 U.S. Dist.

LEXIS 2881, *39 (N.D.N.Y. Jan. 14, 2010) (quotation omitted).  The moving party has the

burden of proving a § 1404(a) venue transfer meets these elements.  *See id.* (citation omitted).

### 1. *Whether the action might have been brought.*

To determine whether this action might have been brought in the Southern District of

Ohio, the Court must consider whether it is the proper venue, and whether the district had *in*

*personam* jurisdiction over Defendants and subject matter jurisdiction when the action was

commenced.  *See Anglo Am. Ins. Group, PLC v. CalFed, Inc.*, 916 F. Supp. 1324, 1330 (S.D.N.Y.

1996).  Plaintiff contests neither the Southern District of Ohio's *in personam* jurisdiction over

Defendants, nor subject matter jurisdiction over his claims.

Plaintiff appears to contest whether the Southern District of Ohio is a venue where the

claim might have been brought.  *See* Dkt. No. 39 at 26; Dkt. 41 at 22.  To determine whether

Plaintiff might have brought this action in the Southern District of Ohio, the Court must consider

whether it is "a judicial district in which a substantial part of the events or omissions giving rise to

the claim occurred, or a substantial part of property that is the subject of the action is situated."

28 U.S.C. § 1391(b)(2) (2013).  "The statutory standard for venue focuses . . . on the location

where the events occurred . . . [and the court] must determine only whether a substantial part of

the events giving rise to the claim occurred in [the district]."  *Bates v. C & S Adjusters, Inc.*, 980

F.2d 865, 868 (2d Cir. 1992) (quotations omitted).  In most instances, the "substantial"

requirement is "meant to protect defendants against the risk that a plaintiff will select an unfair or

inconvenient place for trial."  *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir.

1992) (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979)).  "'Substantiality' for venue

purposes is more a qualitative than quantitative inquiry, determined by assessing the overall

nature of the plaintiff's claims and the nature of the specific events or omissions in the forum." *Id.* at 432-33 (citations omitted).

In Plaintiff's replies to Defendants' motions, he asserts the venue should not be transferred because the disciplinary hearing initiated against him in New York is a "substantial event." *See* Dkt. No. 39 at 26; *see also* Dkt. No. 41 at 22. Plaintiff also, however, alleges that seven lawsuits were filed against him and his mother by Defendants. *See* Dkt. No. 29 at 25. The disciplinary hearing is only one of those seven, and Plaintiff admits that the disciplinary hearing arose from actions and disputes in Ohio. *See* Dkt. No. 39 at 25, 29; *see also* Dkt. No. 41 at 24. Looking at the overall nature of Plaintiff's amended complaint, a substantial part of the events giving rise to Plaintiff's eleven claims occurred in Ohio, including the settlement agreement and its alleged breach, the prenuptial agreement and its alleged breach, the property dispute, and prior lawsuits. Thus, venue would have been appropriate in the Southern District of Ohio.

### 2. *Whether the convenience of parties and witnesses and the interests of justice make transfer is appropriate.*

To determine whether a transfer to the Southern District of Ohio is appropriate considering the convenience of parties and witnesses and the interests of justice, the Court will weigh relevant factors, including,

> (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006) (citing *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)). There is no strict formula for the application of these factors. *See, e.g.*, *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F.

Supp. 2d 395, 402 (S.D.N.Y. 2005); *Andrews v. A.C. Roman & Assocs.*, No. 5:12CV551, 2012 U.S. Dist. LEXIS No. 180014, \*14-15 (N.D.N.Y. Dec. 20, 2012).  Instead, the Court will balance these factors to determine the appropriate forum.  *See Emplrs. Ins. v. Fox Entm't Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008).

### a.  Plaintiff's choice of forum.

While a plaintiff's choice of forum usually receives greater weight than other factors, its weight diminishes when the facts demonstrate little material relation or significant connection to the plaintiff's chosen forum.  *See, e.g.*, *Andrews*, No. 5:12CV551, 2012 U.S. Dist. LEXIS 180014, \*14 (citing *Ramos De Almeida v. Powell*, No. 01CV11630, 2002 U.S. Dist. LEXIS 24200, \*4 (S.D.N.Y. Dec. 16, 2002); *see also Romano v. Banc of Am. Ins. Servs.*, 528 F. Supp. 2d 127, 130-31 (E.D.N.Y. 2007).  The choice receives even less weight when the plaintiff does not reside in his chosen forum.  *See, e.g.*, *Morales v. Navieras de Puerto Rico*, 713 F. Supp. 711, 713 (S.D.N.Y. 1989).

The facts of Plaintiff's case have little relation or connection to the Northern District of New York.  Plaintiff's status as a licensed New York State attorney and the disciplinary proceeding initiated against him in New York State are the only connections to the Northern District of New York in this matter.  *See* Dkt. No. 39 at 28.  The core of Plaintiff's claims arise from facts related to Ohio contracts, property, and lawsuits.  *See, generally.*, Dkt. No. 5.  Even the disciplinary proceeding initiated against him in New York State occurred because of actions taken in Ohio.  *See* Dkt. No. 39 at 29; *see also* Dkt. No. 41 at 24.  Furthermore, Plaintiff does not reside in his chosen forum; he permanently resides in Thailand.  *See*, Dkt. No. 5 at 3, 7, 10, 39.  Since the core facts bear little relation or connection with the Northern District of New York and Plaintiff does not reside in the Northern District of New York, his chosen forum, Plaintiff's choice

does not receive great weight.  Thus, this factor favors transfer.

### b. *Convenience of witnesses*

The convenience of witnesses, both party and nonparty, is one of the most important factors in determining whether to transfer venue.  *See, e.g.*, *Litton*, 2010 U.S. Dist. LEXIS 2881 at *41; *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 988 (E.D.N.Y. 1991).  To satisfy this factor, movants must provide detailed factual statements of "potential principal witnesses expected to be called and a general statement of the substance of their testimony."  *Hernandez*, 761 F. Supp. at 987.  It is not enough for a party to list witnesses living near the forum without enumerating the importance of their testimony.  *See Litton*, 2010 U.S. Dist. LEXIS 2881, at *42 (citing *Kwartra v. MCI, Inc.*, No. 96CIV2491(DC), 1996 U.S. Dist. LEXIS 17883, *2 (S.D.N.Y. 1996)).

Neither Plaintiff nor Defendants provide general statements of witness testimony in their affidavits.  While Plaintiff lists witnesses living in and around New York, he fails to demonstrate the importance of their testimony.  *See* Dkt. No. 39 at 20.  Defendants assert they are unaware of any non-party witnesses in New York State, but that they are aware of numerous non-party witnesses in Ohio State.  *See* Dkt. No. 17 at 4; Dkt. No. 18 at 4; Dkt. No. 19 at 4; Dkt. No. 20 at 3-4; Dkt. No. 27-4 at 17; Dkt. No. 28-3 at 6; Dkt. No. 35-5 at 4; Dkt. No. 35-6 at 3; Dkt. No. 35-7 at 3; Dkt. No. 35-8 at 3; Dkt. No. 35-9 at 3; Dkt. No. 35-10 at 3.  Therefore, this factor is neutral in the analysis.  *See Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 696 (S.D.N.Y. 2009).

### c. *Location of sources of proof.*

Unlike the convenience of witnesses, the location of relevant documents is given little

weight in determining whether venue transfer is appropriate. *See Litton*, 2010 U.S. Dist. LEXIS

2881 at \*48 (citing *Aerotel Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000)). A

party must demonstrate whether obtaining documents would be a burden without transfer. *See id.*

(citing *Oubre v. Clinical Supplies Mgmt., Inc.*, 2005 U.S. Dist. LEXIS 28877 at \*3 (S.D.N.Y.

2005)).

      Neither party maintains there will be a burden in obtaining materials. Defendants assert

that pertinent materials are in Ohio, but do not allege any difficulty regarding transporting them to

New York. *See* Dkt. No. 17 at 3; Dkt. No. 18 at 3; Dkt. No. 19 at 3; Dkt. No. 20 at 3; Dkt. No.

28-3 at 6; Dkt. No. 35-5 at 4; Dkt. No. 35-6 at 3; Dkt. No. 35-7 at 3; Dkt. No. 35-8 at 3; Dkt. No.

35-9 at 3; Dkt. No. 35-10 at 3. Similarly, Plaintiff asserts no burden in obtaining or transporting

documents. *See generally* Dkt. No. 39. Therefore, this factor is neutral.

### d. *Convenience of the parties.*

      As to whether the convenience of the parties favors transfer, the Court first looks to the

residence of the parties, and then ensures an order of transfer would not simply switch the burden

of inconvenience from one party to another. *See Hernandez*, 761 F. Supp. at 988. (citations and

quotations omitted). None of the parties in this case reside in New York. The moving

Defendants are residents or entities organized under the laws of Ohio, and have lived there for

most of their lives. None of the moving Defendants has ever lived in New York. *See* Dkt. No. 17

at 1; Dkt. No. 18 at 1; Dkt. No. 19 at 2; Dkt. No. 20 at 1; Dkt. No. 27-4 at 1; Dkt. No. 28-3 at 2;

Dkt. No. 35-5 at 2; Dkt. No. 35-6 at 2; Dkt. No. 35-7 at 2; Dkt. No. 35-8 at 2; Dkt. No. 35-9 at 2;

Dkt. No. 35-10 at 2. Plaintiff is a resident of Bangkok, Thailand. *See* Dkt. No. 5 at 7. Moreover,

Plaintiff does not dispute that nothing in this case, other than the disciplinary hearing, occurred in

New York State. He connects events that occurred in Ohio to the disciplinary hearing, but does

not assert any other connection arising from New York alone.  Regardless of whether Plaintiff

travels from his residence to New York or to Ohio, he will encounter long travel time and the

same regional time difference.  On the other hand, Defendants will have substantially less travel

time if the case is transferred to the Southern District of Ohio.  Accordingly, this factor favors

transfer.  *See Hernandez*, 761 F. Supp. at 988 (finding that this factor does not favor transfer

when a transfer provides no difference in convenience for the party requesting transfer).

### e.  *Locus of operative events.*

In considering where the operative events occurred, the Court considers whether a cause

of action arises from claims of alleged wrongdoing in the proposed transferee district.  *See Sheet*

*Metal Workers' Nat'l Pension Fund v. Gallagher*, 669 F. Supp. 88, 92-93 (S.D.N.Y. 1987).

"Transfer is not precluded where the operative facts have some connection to the initial forum if

the transferee district has a stronger connection with the operative facts raised in the pleadings."

*View 360 Solutions, LLC*, 2013 U.S. Dist. LEXIS 34480, at *14 (citing *Sheet Metal Workers'*

*Nat'l Pension Fund*, 669 F. Supp. at 92-93).

Plaintiff's eleven counts stem from property disputes occurring in Ohio after the death of

Plaintiff's grandmother.  Plaintiff asserts that the disputes in Ohio "proximately caused" the

disciplinary hearing in New York.  *See* Dkt. No. 41 at 24.  Besides the disciplinary hearing, the

other causes of action giving rise to Plaintiff's claims occurred in Ohio.  For example, the

settlement agreement and prenuptial agreement are both documents forged in Ohio and allegedly

breached in Ohio, the fraud counts allegedly occurred in Ohio, the antitrust counts allegedly

occurred in Ohio courts, and much of the malicious prosecution count occurred in Ohio.  While

the operative facts from the disciplinary hearing have a connection to the Northern District of

15

New York, the Southern District of Ohio has a stronger connection with the operative facts in Plaintiff's pleadings. Thus, this factor favors transfer.

### *f. Ability of the transferee court to compel unwilling witnesses.*

"'In determining whether a change of venue is appropriate, the Court will . . . examine the ability to compel the attendance of witnesses.'" *View 360 Solutions LLC*., 2013 U.S. Dist. LEXIS 34480, at \*16 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 332-33 (E.D.N.Y. 2006)). A district court can compel the attendance of witnesses within the district or within one hundred miles of the place specified in the subpoena. *See* Fed. R. Civ. P. 45(b)(2).

Defendants assert that they know of no witnesses to the claims outside of Ohio, and do not allude to any unwilling witnesses. Plaintiff asserts that of his more than six witnesses, all reside in or near New York, and that two of them are "very hostile," and from Albany, New York. *See* Dkt. No. 39 at 20. Plaintiff states that former United States Attorney General Ramsey Clark is one of his "primary 'non-hostile'" witnesses, who is currently a New York attorney. *See id.* Plaintiff, however, fails to indicate how Mr. Clark's testimony is in any way relevant to Plaintiff's claims, and the Court is at a loss to find any relevant connection. Similarly, Plaintiff names three additional New York attorneys he claims that he intends to call as witnesses, but he provides no indication how or why their testimony is relevant or necessary to support his claims. *See id.* Since there is no indication that the two unnamed third-party "hostile" witnesses are material or able to provide relevant testimony, this factor favors transfer. *See ATEN Intern. Co. Ltd. v. Emine Technology Co., Ltd.*, 261 F.R.D. 112, 124 (E.D. Tex. 2009) (citation omitted).

### *g. Relative means of the parties.*

When there is a financial disparity between parties, the Court may consider their relative

means to determine whether transfer is appropriate. *See Hernandez*, 761 F. Supp. at 989.

Plaintiff asserts he is paying back loans from college and law school, and that traveling to and

from Thailand is expensive. *See* Dkt. No. 5 at 57; Dkt. No. 39 at 26. Defendants assert traveling

to New York for litigation and absence from their jobs will be costly. *See* Dkt. No. 17 at 2; Dkt.

No. 18 at 3-4; Dkt. No. 19 at 3-4; Dkt. No. 20 at 3; Dkt. No. 27-4 at 3; Dkt. No. 28-3 at 6; Dkt.

No. 35-5 at 3; Dkt. No. 35-6 at 3; Dkt. No. 35-7 at 3; Dkt. No. 35-8 at 3; Dkt. No. 35-9 at 3; Dkt.

No. 35-10 at 3. Plaintiff, however, will have to travel from Thailand to prosecute this case

regardless of whether this case is tried in New York or Ohio.

     Considering all of the relevant factors, the Court finds that Defendants have met their

burden of establishing that the Southern District of Ohio is the proper forum for this matter. It is

clear that the claims and parties in this matter have almost no relationship to New York or this

District. The Court will not determine the other substantive or procedural matters, leaving it to

the transferee venue for their consideration.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable

law, for the above-stated reasons, the Court hereby

     **ORDERS** that Defendants' Motions, insofar as they seek transfer of venue to the Southern

District of Ohio (Dkt. Nos. 16, 28, 35), are **GRANTED**;[15] and the Court further

     **ORDERS** Defendants remaining motions are **DENIED without prejudice**; and the Court

---

[15] Although not all Defendants moved for a transfer of venue, the Court may *sua sponte* transfer a case "'[f]or the convenience of parties and witnesses,' and 'in the interest of justice[.]'" *Delgado v. Villanueva*, No. 12 Civ. 3113, 2013 WL 3009649, *3 (S.D.N.Y. June 18, 2013) (quotation and other citation omitted). Pursuant to section 1406, a district court may transfer a case even when it lacks personal jurisdiction over some or all of the defendants. *See* 28 U.S.C. § 1406(a). Accordingly, the Court exercises its discretion pursuant to section 1404(a) to transfer the entire case to the Southern District of Ohio. *See Delgado*, 2013 WL 3009649 at *5.

further

      **ORDERS** that the Clerk of Court shall electronically transfer this action to the United

States District Court for the Southern District of Ohio; and the Court further

      **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 24, 2013
       Albany, New York

Mae A. D'Agostino
U.S. District Judge